UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                    :

PAUL HISLER,

                                                    :

                            Petitioner,             **MEMORANDUM DECISION**

                                                    :

            - v -                                   1:21-cv-03676 (DC)

                                                    :

MARK ROYCE, Superintendent of the
Green Haven Correctional Facility,                  :

                            Respondent.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


APPEARANCES:          PAUL HISLER
                      Petitioner *Pro Se*
                      DIN 15-A-1789
                      Green Haven Correctional Facility
                      Stormville, NY 12582

                      LETITIA JAMES, Esq.
                      Attorney General of the State of New York
                      By:    Michelle E. Maerov, Esq.
                             Priscilla Steward, Esq.
                             Assistant Attorneys General
                      28 Liberty Street
                      New York, NY 10005
                             Attorney for Respondent

CHIN, Circuit Judge:

            On March 18, 2015, following a jury trial, petitioner Paul Hisler was

convicted in the Supreme Court of New York, Queens County (Latella, *J.*), of second-

degree burglary, second-degree assault, second-degree criminal trespass, and attempted second-degree escape.  Dkt. 11-3 at 594-95.  He was sentenced, as a persistent violent felony offender, to concurrent prison terms of sixteen years to life on the burglary and assault counts, and a one-year concurrent jail term on each of the trespass and attempted escape counts.  The Appellate Division, Second Department, unanimously affirmed his convictions, *People v. Hisler*, 68 N.Y.S.3d 904 (2d Dep't 2018) ("*Hisler I*"), and the New York Court of Appeals denied leave to appeal, *People v. Hisler*, 31 N.Y.3d 1083 (2018) (Fahey, *J*.) ("*Hisler II*").  By papers dated June 6, 2021, and received by this Court on June 29, 2021, Hisler filed, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  Dkt. 1.  On November 14, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

*STATEMENT OF THE CASE*

I.    *The Facts*

The evidence at trial established the following: [1]

At around 7:00 A.M. on December 18, 2012, Hisler broke into a Forest Hills home through the back bathroom window, shattering the glass.  Dkt. 11-3 at 366-

---

[1]    The facts are primarily drawn from Respondent's brief submitted in opposition to Hisler's direct appeal in the Appellate Division in 2017.  *See generally* Dkt. 11 at 239.  The recitation of facts set forth in the state appellate brief are supported by detailed citations to the record, including the transcript of the trial and subsequent sentencing.

67.  The noise awakened the homeowner, Joanna Yan, who came downstairs.  *Id.* at 367.

Upon seeing Yan, Hisler fled, leaving blood behind.  *Id.* at 368-69.  A DNA profile was

generated from the blood recovered at the crime scene.  *Id.* at 504-05.  About four

months later, the police were notified that this DNA profile matched Hisler's DNA

profile that was on file with the New York State DNA Index System.  Dkt. 11 at 58.  The

police arrested Hisler and brought him to the police station.  Dkt. 11-3 at 402-03.  When

they informed him of the DNA match during an interview at the police station, he

shoved a table into a police officer and tried to flee.  *Id.* at 464-65.  The officer was

injured as a result.  *Id.* at 468-69.  Upon court order, Hisler provided a buccal swab, and

its DNA profile also matched the blood at the crime scene.  *Id.* at 471-73.

## II.    *The State Court Proceedings*

### A.    *Pre-Trial Proceedings*

On May 3, 2013, the court appointed George Welch of the Legal Aid

Society to represent Hisler.  Dkt. 11 at 246; Dkt. 11-3 at 2-3.  Welch negotiated a

disposition for Hisler.  Dkt. 11 at 246.  Welch also prepared and filed a pre-pleading

memorandum.  *See* Dkt. 11-1 at 191.  In preparing this memorandum, Welch met with

Hisler's mother on numerous occasions, had Hisler psychologically evaluated by a

social worker, and consulted with Hisler's psychotherapist.  *Id.* at 72-72.  Welch's pre-

pleading memorandum argued that Hisler was "deserving of compassion and leniency

based on the mitigating circumstances of his life."  *Id.* at 194.  At an October 9, 2013

court appearance before Justice Dorothy Chin-Brandt, Hisler rejected the offer and requested new counsel, claiming that counsel had not consulted with him. *Id.* at 72-73. The court granted the request and assigned Gary Miret to represent Hisler. *Id.*

Hisler was indicted on January 7, 2014 by a grand jury and charged with second-degree burglary, second-degree criminal trespass, fourth-degree criminal mischief, second-degree assault, resisting arrest, and attempted second-degree escape. *See* Dkt. 11-13 at 603.

The case was reassigned to Justice Barry Kron. Several weeks later, at a March 27, 2014 appearance before Justice Kron, Miret asked to be relieved. Dkt. 11-3 at 2. He stated that Hisler had rejected a proposed disposition and had been verbally abusive towards him. *Id.* at 3-4. Hisler stated that Miret wanted him to "cop out" to avoid a life sentence and agreed it "would be best" for him and Miret "to part ways." *Id.* at 43. The court stated that Miret had made "appropriate motions" and had properly advised Hisler about his sentencing exposure. *Id.* at 6. Still, the court relieved Miret and appointed Stuart Grossman, "a very capable experienced attorney." *Id.* at 8. The court advised Hisler to cooperate with Grossman, that it would not "keep flipping lawyers," and that Grossman would be Hisler's "third and final" assigned counsel. *Id.*

On May 14, 2014, Grossman represented Hisler at a pre-trial *Huntley* hearing on Hisler's motion to suppress his statement to the police. *See id.* at 53. Detective Bahrenburg testified that Detective Donleavy administered each of the

4

*Miranda* warnings, and Hisler verbally answered "yes" to each question, and so indicated with his initials, before he answered the officers' questions. *Id.* at 65-67. The court found Bahrenburg's testimony credible and denied the motion. *Id.* at 94.

On September 10, 2014, Hisler argued to the court that Bahrenburg's testimony was inaccurate as Hisler did not initial the last question on the *Miranda* form. Dkt. 11 at 15; Dkt. 11-3 at 12. Hisler stated that "did not wish to be questioned" by the police, and so indicated by not placing his initials on the last question on the *Miranda* form. Dkt. 11-3 at 12. Hisler took issue with Grossman's failure to raise this at the *Huntley* hearing. *Id.* The court noted that it may have been a strategic choice. *Id.* at 13-14. Counsel may have anticipated that Hisler would have needed to testify to make this specific claim, and wanted to prevent Hisler from being cross-examined on his hearing testimony should he later wish to testify at trial. *Id.*

On October 4, 2014, Hisler moved for new counsel, reiterating Grossman's mishandling of the *Miranda* sheet. *Id.* at 17. At a October 22, 2014 appearance, the court denied this motion, finding no basis for assigning a new lawyer. *Id.* On November 28, 2014, Hisler moved again for new counsel. Dkt. 11 at 4-5. Hisler complained once more about Grossman's performance at the *Huntley* hearing. *Id.* at 4. Hisler also asserted that Grossman had failed to file a speedy trial motion, failed to discuss his defense with him, and failed to request a psychiatric evaluation for Hisler even though counsel knew that

petitioner had "psychiatric issues" for which he had been "declared disabled."  *Id.* at 4-5.

Hisler also wrote that "if necessary," he would represent himself.  *Id.* at 5.

On December 5, 2014, the court ruled that Grossman was prepared for the *Huntley* hearing and there was no basis for a speedy trial motion when the period in question was covered by waivers of time filed while counsel was negotiating a disposition.  Dkt 11-3 at 21-23.  With respect to Hisler's psychiatric condition, the court asked Hisler "what specifically are your psychiatric issues."  *Id.* at 20.  Hisler responded that he had a "personality disorder."  *Id.*  The court asked whether Hisler had seen a "psychiatrist" and if he had any "medical psychiatric records."  *Id.*  Hisler stated that prior to his arrest one and one-half years earlier, he had been seeing a therapist once a week and a "psychiatrist" once a month but did not provide records.  *Id.*

The court rejected Hisler's claims that he was unfit to proceed to trial or that Grossman should have requested a psychiatric evaluation, stating:

> In terms of your understanding the court system [and] your ability to represent yourself, in the little bit you've said about the reason you can't go forward, I don't find that to be enough from what I've seen and observed from you on all these calendar calls to warrant a 730 exam being done.  There is no reason to believe you're not fit to proceed.

*Id.* at 23.  The court also denied Hisler's request for a fourth appointed lawyer.  *Id.* at 24. The court found that Hisler did not "want to move forward with [Grossman]" because he is "a mandatory violent persistent" felon, and if convicted, he was "facing a life sentence."  *Id.*  It explained that he would not be releasing Grossman; therefore, Hisler

would represent himself if he continued to be dissatisfied.  *Id.* at 26-27.  Hisler stated, "I can't do any worse than Mr. Grossman."  *Id.* at 27.  The court then deferred a decision on Hisler's request to represent himself, noting that he had to conduct a inquiry with Hisler before granting such request, and adjourned the case until February 20, 2015.  *Id.*

At the February 20, 2015 court appearance, Hisler continued to insist that he did not want Grossman to represent him.  *Id.* at 30.  The court observed that Hisler's two "previous [lawyers] were not . . . replaced for any formal reason, but simply because [petitioner did not] have a working relationship with them."  *Id.* at 32.  The court asked Hisler to explain the problems he was having with Grossman.  *Id.*  Hisler explained that Grossman kept telling him that he was "sorry," which seemed to be "conceding defeat."  *Id.* at 33.  Hisler also raised the issue of the *Huntley* hearing and speedy trial motion again.  *Id.* at 37.  The court ruled again that there was no basis to relieve Grossman, who, the court observed, was an "excellent lawyer."  *Id.* at 36-38.

At a March 6, 2015 court appearance, the court stated that Hisler's case was ready for trial and Hisler asserted that he would represent himself.  Dkt. 11-3 at 42. The court then engaged in a colloquy with Hisler to determine whether he understood the consequences of waiving counsel and self-representation.  *See id.* at 43-52.  Hisler stated that he had reached the tenth grade, knew how to "express [himself] in court," he had spent time at the law library while incarcerated, and had conducted legal research. *Id.* at 45.  Hisler also acknowledged that he had been in and out of the criminal justice

system for 35 years but had never been to trial. *Id.* at 46. He expressed that he was not able to immediately absorb legal material and had to read the material ten times to understand it due to his psychiatric condition. *Id.* at 45. The court warned Hisler that he would be subject to the same rules of evidence and cross-examination that would apply to an attorney. *Id.* Hisler said he understood. *Id.*

The court told Hisler that the People's evidence included his DNA that matched the blood at the crime scene and warned him that jurors are generally impressed with DNA evidence. *Id.* at 47. The court also noted that DNA evidence is very "technical" and "difficult," and that an experienced defense attorney such as Grossman would be "capable" of cross-examining the DNA expert. *Id.* The court warned Hisler that he would not be "serving [his] own interest by representing [himself]" and would be "making a mistake," especially because he was "facing a minimum of sixteen years to life," did not "have a great deal of formal education," had not "readily absorbed a great deal of the law [that he read] in [the] law library," and had not "been in a courtroom and watched other lawyers cross-examining witnesses." *Id.* at 48. The court informed Hisler that Grossman would remain available for consultation as Hisler's "legal advisor." *Id.* at 48-49. Hisler stated that he understood everything the court said and maintained his wish to represent himself. *Id.* at 49. The court found that Hisler made a "knowing, intelligent, [and] voluntary" decision to represent himself. *Id.*

8

Hisler's case was sent to Justice Latella for trial.  Hisler requested an adjournment to secure "medical records" and contact his former "psychiatrist."  Dkt. 11-3 at 120.  The court asked Hisler what he intended to establish with these records.  *Id.*  Hisler responded "for the burglary . . . I suffer from schizophrenia and I have personality disorder."  *Id.*  The court denied the request.  *Id.*  It noted the case had been pending for almost two years and ruled that Hisler was "well aware" of "any psychological or psychiatric problems" he might have had and had "ample opportunity" to obtain records.  *Id.* at 120-22.  The court also stated it would not "revisit" Justice Kron's determinations regarding Hisler's "ability" and "desire" to represent himself.  *Id.* at 121.

### B.   *Trial*

Hisler proceeded *pro se* to a trial by jury.  Justice Latella presided at both the trial and sentencing.  The jury heard testimony from Joanna Yan who testified that she awoke on the morning of December 18, 2012 to a "really loud bang" and saw a tall stranger.  Dkt. 11-3 at 366-67.  The man saw her and fled out the back door.  *Id.* at 369.  Yan discovered that her bathroom window was shattered and there was blood in the dining room, bathroom, and outside her house.  *Id.* at 368-69.  The jury also heard from Detectives Michael Donleavy, Greg Bahrenburg, and John Guittari, who responded to Yan's residence and collected swabs from the blood and Yan's cheek for DNA testing.

Beatrice Noel, the People's DNA expert and a chemist in the Office of the Chief Medical Examiner ("OCME") also testified. She conducted testing of the three swabs taken from the crime scene and determined that they all belonged to the same unknown male DNA profile. *Id.* at 505. The DNA profile was submitted to the State DNA Index System for a possible match. OCME later received a letter indicating that a match had been made between the unknown male DNA profile and Hisler's DNA profile in the State DNA Index System database. Dkt. 11 at 58. Hisler was ordered to provide a buccal swab to police, which OCME received. Dkt. 11-3 at 472. Noel compared the DNA from Hisler's swab to the DNA profile she had generated from the three swabs taken from Yan's residence. *Id.* at 507-08. The testing showed that Hisler's DNA profile was the same as the male DNA profile; therefore, "Hisler was the source of the DNA profile." *Id.* at 510-11. Noel is identified as the "Interpreting Analyst" on the "Forensic Biology DNA Profile Evaluation Form," the "Analyst" on the "Laboratory Report," and a "reviewer" of the DNA comparison. *See* Dkt. 11 at 92, 135-36, 149.

Detective Donleavy testified regarding his interrogation of Hisler. He stated that he advised Hisler of his *Miranda* rights by reading them from a prepared form and asked Hisler if he understood after reading each right. Dkt. 11-3 at 405-408. Hisler verbally responded "yes" to each question listed on the form. *Id.* Donleavy memorialized these answers by writing "yes" to each question listed. *Id.* Donleavy asked Hisler to write his initials next to each question and to sign his name at the

10

bottom of the form. *Id.* at 408. Donleavy did not realize until the day of his testimony that Hisler failed to initial the last question, which read, "Now that I have advised you of your rights, are you willing to answer questions?" *Id.* at 407-08. Donleavy maintained that Hisler had verbally answered yes, did not know why Hisler did not initial this last question, and was not reluctant to speak with him. *See id.* at 408-09.

Finally, both Detectives Donleavy and Bahrenburg testified about the assault on Bahrenburg during the interview at the police station. Donleavy and Bahrenburg confronted Hisler with the DNA evidence. *Id.* at 409, 464-65. After Donleavy left the room to retrieve the report, Hisler "slammed [the table] into" Bahrenburg and "ran for the door." *Id.* at 465. Bahrenburg and his chair "went flying back" and he fell to the ground. *Id.* Hisler ran to the door and Bahrenburg grabbed him. *Id.* at 466. Hisler then "turned around and threw a punch" at Bahrenburg, who "ducked" the blow. *Id.* As Hisler again went for the door, Bahrenburg grabbed him around the waist and "kind of threw [Hisler] onto the table." *Id.* Bahrenburg and Hisler "wrestled around on the table, then fell down to the ground." *Id.*; *see also id.* at 412. Three officers came into the room and handcuffed Hisler and placed him in a holding cell. *Id.* at 467-68.

Bahrenburg suffered severe pain in his back and a sore right shoulder. *Id.* Both injuries limited his movement. *Id.* at 469 ("Well, my back, I couldn't move. If I turned, it hurt. My shoulder, I couldn't really use it that much."). He also experienced

"severe pain going from [his] back all the way down to [his] knee for approximately three to four days." *Id.* at 468. He rated the level of pain as a seven or eight on a scale of one to ten. *Id.* at 469. He was treated at North Shore Hospital. *Id.* He was unable to perform his assigned duties on the "street" and was placed on desk duty for a few days. *Id.* at 469-70. Approximately 30 minutes after the assault, Hisler was brought back into the interview room. *Id.* at 470. Hisler asked to make a deal with the District Attorney's office for "five years." *Id.* at 471-72.

Hisler did not put on any evidence. *Id.* at 529.

## C.    *The Verdict and Sentence*

At the close of evidence, the court granted Hisler's motion to dismiss the resisting arrest charge. *Id.* at 523. The jury also acquitted Hisler of fourth-degree criminal mischief. *Id.* at 594-95. The jury did, however, convict Hisler of second-degree burglary, second-degree criminal trespass, second-degree assault, and attempted second-degree escape. *Id.* At sentencing on April 20, 2015, the court denied Hisler's pretrial CPL § 30.30 (speedy trial) motion and ruled that only 58 days of the delay was charged to the People, and was caused by factors such as trial and hearing preparation. *Id.* at 603-06. The court adjudicated Hisler a persistent violent felony offender and sentenced him to concurrent, indeterminate prison terms of 16 years to life on the burglary and assault counts, and a one-year concurrent jail term on each of the trespass and attempted escape counts. *Id.* at 612-13.

### D.  *Direct Appeal*

Hisler filed a counseled brief in the Appellate Division, Second Department, arguing that (1) he was denied his right to counsel because the trial court denied his request for a new attorney and forced him to proceed *pro se* without a sufficient inquiry into his psychiatric condition; (2) the evidence was not legally sufficient to establish his guilt of second-degree assault; and (3) he was denied his Sixth Amendment right to confront witnesses when the People introduced DNA evidence through a witness who did not conduct the final testing.  Dkt. 11 at 190-237.

The Appellate Division unanimously affirmed the judgment of conviction. *Hisler I*, 68 N.Y.S.3d at 904.  The court found that both the sufficiency of the evidence and DNA claims were unpreserved for appeal and meritless in any event.  *Id.*  The court rejected Hisler's claim that his waiver of the right to counsel was invalid.  It found that "the court had no reason to believe that the defendant suffered from a mental illness that affected his ability to waive counsel and proceed *pro se* . . . [and] providently exercised its discretion in not undertaking a particularized assessment of [Hisler's] mental capacity."  *Id.* at 905 (emphasis added) (internal citations omitted).  Hisler filed a counseled application for leave to appeal to the New York Court of Appeals.  Dkt. 11 at 315; Dkt. 11-1 at 1-4.  Hisler only argued that the trial court failed to conduct a sufficient inquiry into Hisler's mental capacity to represent himself at trial.  The court (Fahey, *J.*) denied leave.  *Hisler II*, 31 N.Y.3d at 1083.

E.    *State Collateral Review*

On November 9, 2018, Hisler moved in the Supreme Court, Queens County, to vacate the judgment of conviction pursuant to CPL § 440.10.  Hisler argued that (1) his trial attorneys were ineffective; (2) he was unable to understand the trial proceedings and to assist in his own defense because of his mental disability; (3) the trial court used undue psychological pressure to secure his conviction by forcing him to represent himself at trial and refusing to consider his mental health history; and (4) he was denied his statutory right to a speedy trial pursuant to CPL § 30.30.  *See* Dkt. 11-1 at 14.  The court (Latella, *J.*) denied the motion in its entirety, and the Appellate Division (Lasalle, *J.*) denied leave to appeal on December 20, 2019.  Dkt. 11-2 at 9-11; 47.

On May 13, 2020, Hisler moved *pro se* for a writ of error *coram nobis*, arguing that he was denied the effective assistance of appellate counsel.  He asserted that his counsel (1) should not have raised two unpreserved arguments; (2) failed to use additional facts in the record regarding Hisler's mental illness that would have provided additional support for his mental incapacity claim; and (3) should have argued that trial counsel was ineffective for failing to provide the court with evidence of Hisler's psychiatric illness.  Dkt. 11-2 at 48-53.  Hisler's appellate counsel submitted an affirmation responding to his claims.  *Id.* at 110-113.  The Appellate Division denied the motion on December 30, 2020.  *Id.* at 158.  Hisler sought leave to appeal, which the Court of Appeals (Garcia, *J.*) denied on May 28, 2020.  *Id.* at 166.

14

III.    *The Petition*

By papers dated June 6, 2021, and received by this Court on June 29, 2021, Hisler filed, *pro se*, the Petition.  Dkt. 1.  The New York Attorney General filed her opposition on November 5, 2021.  Dkt. 10, 10-1.  Hisler replied on March 2, 2022, and submitted additional attachments to the Petition on March 18, 2022.  Dkt. 14; Dkt. 15. The case was reassigned to the undersigned on November 14, 2024.

## DISCUSSION

I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition where the petitioner is in custody pursuant to a judgment of a state court unless the petitioner "has exhausted the remedies available in the courts of the State" or such process is unavailable or ineffective.  28 U.S.C. § 2254(b)(1)(A); *see id.* § 2254(b)(1)(B); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("[A] state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application.") (internal citations omitted).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citations omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on

15

state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted). Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York laws governing a petitioner's failure to raise a claim on direct appeal "represent[] the application of a 'firmly established and regularly followed' New York rule." *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted).

If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause" for a procedural default, the petitioner must ordinarily show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule" in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *accord Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008). To establish "actual prejudice," a petitioner must show that "errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Finally, to show a "fundamental miscarriage of justice," a petitioner must show that "a constitutional

16

violation has probably resulted in the conviction of one who is actually innocent."

*Murray*, 477 U.S. at 496.

On the other hand, where a petitioner's claim was adjudicated on the merits in state court, a federal court may not grant a habeas petition regarding that claim unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam). "The state courts' findings of fact are presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012); 28 U.S.C. § 2254(e)(1). The petitioner "bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Epps*, 687 F.3d at 50; *see also Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013).

17

## II.    *Analysis*

Hisler raises eight claims: (1) he was denied the right to counsel when the court denied his request to have a fourth attorney appointed for him and was forced to represent himself without a sufficient inquiry into his psychiatric condition; (2) the evidence was legally insufficient to support the second-degree assault conviction; (3) he was denied his confrontation rights because the DNA evidence was submitted through a witness who did not perform the final tests; (4) he was denied the effective assistance of counsel; (5) he was mentally unfit to stand trial; (6) the trial court used undue psychological pressure to secure his conviction; (7) his speedy trial rights were violated; and (8) he was denied the effective assistance of appellate counsel. *See generally* Dkt. 1.

### A.    *Competency to Stand Trial*

I begin with Hisler's claim that his due process rights were violated based on his inability to "understand or participate in the trial due to a mental disability." Dkt. 1 at 4 (Ground 5).  Hisler raised the issue of his competency on direct appeal in the context of his Sixth Amendment right to counsel, arguing the trial court "fail[ed] to determine whether Hisler was competent to represent himself in light of his psychiatric illness." Dkt. 11 at 219.  He did not argue, as he does in Ground 5 of the petition, that his due process rights were violated.  The standard for competence to waive the right to counsel, however, is the same as that for competence to stand trial. *Godinez v. Moran*,

509 U.S. 389, 397 (1993); *see also United States v. Garrett*, 42 F.4th 114, 119-20 (2d Cir. 2022).

The Appellate Division rejected the claim on the merits, holding that "the [trial] court had no reason to believe that the defendant suffered from a mental illness that affected his ability to waive counsel and proceed *pro se* . . . and providently exercised its discretion in not undertaking a particularized assessment of the defendant's mental capacity in resolving the defendant's request to proceed pro se." *Hisler I*, 68 N.Y.S.3d at 905. Because the Appellate Division disposed of Hisler's competency claim on the merits, I must afford the state court's decision "substantial deference," *Fischer*, 780 F.3d at 560, and will only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application" of clearly established federal law. *Harrington*, 562 U.S. at 98.

"The criminal trial of an incompetent defendant violates the Due Process clause of the Fourteenth Amendment." *Musaid v. Kirkpatrick*, 114 F.4th 90, 108 (2d Cir. 2024) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975). Criminal defendants are incompetent to stand trial if their "mental condition is such that [they] lack[ ] the capacity to understand the nature and object of the proceedings against [them], to consult with counsel, and to assist in preparing [their] defense." *Drope*, 420 U.S. at 171. "Because this constitutional right spans the duration of a criminal proceeding, 'a trial court must always be alert to circumstances suggesting a change that would render the

19

accused unable to meet the standards of competence to stand trial.'" *Musaid*, 114 F.4th at 109 (quoting *Drope*, 420 U.S. at 181).  Where there is "sufficient doubt as to a defendant's competence to stand trial, the failure of the trial court to conduct a competency hearing [or inquiry] *sua sponte* violates due process." *Id.* at 108 (internal citations omitted).  In determining whether reasonable grounds exist for a competency hearing, the court considers "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180.

On this record, no reasonable grounds existed to suggest that Hisler was incompetent.  Justice Kron, who had presided over Hisler's case for a year and observed Hisler at several calendar calls, found "no reason to believe" that Hisler was unfit to proceed or that a psychiatric exam was warranted.  Dkt. 11-3 at 23.  The trial court "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Indiana v. Edwards*, 554 U.S. 164, 177 (2008).  Moreover, Hisler's first attorney, Welch, had a psychological assessment of Hisler completed in preparation for the pre-pleading memorandum.  As part of this assessment, a forensic social worker conducted an intensive in-person interview with Hisler, a telephone interview with Hisler's mother, contacted Hisler's psychotherapist, and reviewed Hisler's health records.  Dkt. 11-1 at 191-197; 11-2 at 1-2.  Hisler's attorney did not raise any concerns about Hisler's competency based on this

20

assessment. Indeed, Hisler had three separate attorneys over the course of the pre-trial and trial proceedings -- no attorney ever raised Hisler's competency as a concern.

Although the social worker's assessment confirmed that Hisler suffered from several long-term mental health diagnoses, it did not indicate that Hisler was incompetent or unable to understand the nature of the proceedings against him or assist in the preparation of his defense. "The mental illness must deprive the defendant of the ability to consult with his lawyer 'with a reasonable degree of rational understanding' and to understand the proceedings against him rationally as well as factually." *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

The record reflects that Hisler understood the proceedings against him both rationally and factually, consulted with counsel, and assisted in his own defense. He filed several pretrial *pro se* motions and successfully moved for the dismissal of the resisting arrest charge. *See, e.g.*, Dkt. 11 at 4-14; Dkt. 11-3 at 523. He also showed his understanding of the evidence and possible defenses by conceding his presence at the crime scene and arguing that he had no intent to burglarize Yan's home. *See* Dkt. 11-3 at 361 (conceding he was guilty of second-degree trespass but not third-degree burglary); *see also id.* at 537-39. Hisler had one "outburst" during trial that was brought on because Hisler had not received his medication that morning. *Id.* at 442-445. After speaking with the jail, the court immediately adjourned for the day and told Hisler that if he was

21

unable to continue to represent himself, Grossman would be reinstated to represent him. *Id.* The next day, Hisler was able to proceed. *Id.* at 451. The state court's decision was not an unreasonable application of law or an unreasonable determination of the facts. Therefore, Hisler is not entitled to habeas relief on this ground.

**B.    *Right to Counsel***

Hisler argues that the court violated his Sixth Amendment right to counsel when it denied his request for a fourth attorney and forced him to appear *pro se* without a sufficient psychiatric inquiry. Dkt. 1 at 4. (Ground One). Relatedly, Hisler also argues that the trial court used duress and undue psychological pressure to secure the conviction. *See id.* (Ground 6).

**1.    *Request for Substitute Counsel***

Hisler's argument that his right to counsel was violated when the trial court denied his fourth request for new counsel is meritless. While a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right. *See United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979). "Absent a conflict of interest, a defendant in a criminal case does not have the unfettered right to retain new counsel . . . ." *United States v. Paone*, 782 F.2d 386, 392 (2d Cir. 1986). Rather, a defendant's right to counsel must be circumscribed to prevent manipulation by the defendant or "interfere[nce] with the fair administration of justice." *See McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) (citing *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir. 1963)).

22

The Second Circuit applies a four-factor test to assess whether a court abused its discretion in denying a motion to substitute counsel: (1) whether the defendant's motion for new counsel was timely, (2) whether the court "adequately inquired into the matter," (3) "whether the conflict between defendant and attorney was so great that it resulted in a total lack of communication preventing an adequate defense," and (4) whether the defendant "substantially and unjustifiably contributed to the breakdown in communication." *United States v. John Doe No. 1*, 272 F.3d 116, 122-24 (2d Cir. 2001). As to the second factor, "where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *McKee*, 649 F.2d at 933 (internal quotation marks and citation omitted).

The Appellate Division rejected Hisler's claim on the merits. *Hisler I*, 68 N.Y.S.3d at 904-05. Its decision is not unreasonable, and is therefore entitled to "substantial deference," *Fischer*, 780 F.3d at 560, because the claim fails the four-factor test.

The first factor, the timeliness of the request, weighs against Hisler. The Second Circuit has held that a "defendant with assigned counsel cannot decide for no good cause on the eve or in the middle of trial that he will have another attorney represent him." *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972). Hisler made his initial request for a fourth attorney on October 4, 2014, after the case had been pending for over a year, and after he had already gone through two previous lawyers.

23

Indeed, the trial court found that Hisler's fourth request was in part a delay tactic.  It concluded that Hisler did not "want to move forward with" with his third appointed attorney simply because he is "a mandatory violent persistent" felon, and if convicted, he was "facing a life sentence."  Dkt. 11-3 at 24.  Hisler's request was not timely.

Nor can Hisler satisfy the second factor -- that is, showing that the court failed to adequately inquire into the new counsel request.  The court engaged in an extended discussion with Hisler about his request at both the December 5, 2014 and February 20, 2015 court appearances.  *See* Dkt. 11-3 at 20-24, 33-40.  Hisler asserted that Grossman's performance at the *Huntley* hearing was deficient, and that Grossman had failed to file a speedy trial motion and to request a competency evaluation even though he knew that Hisler had "psychiatric issues."  *Id.* at 20.  The court, however, found that Grossman had adequately prepared for and performed at the *Huntley* hearing and that any speedy trial motion would have been meritless because the period in question was covered by waivers of time filed when Hisler's prior counsel was negotiating a plea. The court also inquired further into Hisler's claim regarding the competency evaluation. When asked about his "psychiatric issues," Hisler stated that he had a "personality disorder" and had been seeing a therapist and psychiatrist one and half years earlier but provided no medical records.  *Id.* at 20.  The court ruled, based on Hisler's response and his observation of Hisler at "all these calendar calls," that "[t]here [was] no reason to

24

believe [he was] not fit to proceed" and that nothing Hisler said "warrant[ed] a 730 [fitness] exam." *Id.* at 23.  The court therefore adequately inquired into Hisler's request.

Hisler also cannot meet the third factor because he fails to show that the conflict between him and Grossman was so great that it resulted in a total lack of communication preventing an adequate defense.  Hisler did not assert a lack of communication between him and Grossman.  Hisler only stated that Grossman kept telling him that he was "sorry," which seemed to be "conceding defeat." *Id.* at 33.  But the mere fact that Grossman "informed [Hisler] that his chances for acquittal were slim" "simply cannot constitute 'good cause' for requesting new counsel." *McKee*, 649 F.2d at 932 ("The starting point for effective representation is a realistic assessment of the prospects of success in light of the risks of failure.").  And Grossman continued to prepare for trial despite the difficulties in the relationship.  For example, Grossman obtained and consulted with a DNA expert and consulted with Hisler on his speedy trial motion.  Dkt. 11-3 at 43-44; 113.

Finally, even if the conflict between Grossman and Hisler was so great as to impede Hisler's defense, the record before the trial court -- including Hisler's pattern of removing attorneys without good cause -- suggests that Hisler "substantially and unjustifiably contributed" to the conflict. *Doe No. 1*, 272 F.3d at 124.  Accordingly, the fourth factor weighs against substitution as well.  Hisler has not shown that the court

abused its discretion in denying his motion to substitute counsel.  Therefore, this aspect of Hisler's claim fails.

### 2. Knowing and Voluntary Waiver of Right to Counsel

The second aspect of Hisler's claim, that the trial court forced him to proceed *pro se* without a sufficient psychiatric inquiry, fares no better.  The Appellate Division rejected this claim, finding that "in view of the whole record, the court had no reason to believe that the defendant suffered from a mental illness that affected his ability to waive counsel and proceed *pro se*."  *Hisler I*, 68 N.Y.S. 3d at 904-05.  This ruling is entitled to deference because it was not an unreasonable application of federal law or an unreasonable determination of the facts.

"Under the Sixth Amendment, the accused is guaranteed the right of electing to represent himself."  *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994) (quoting *Faretta v. California*, 422 U.S. 806 (1975)).  A defendant may proceed *pro se* if he "knowingly, voluntarily, and unequivocally waives his right to appointed counsel," *id.* (internal quotation marks and citations omitted), and he is able and willing to abide by the rules of procedure and courtroom protocol, *see Davis v. Grant*, 532 F.3d 132, 142 (2d Cir. 2008); *Faretta*, 422 U.S. at 807.  Before granting a request to proceed *pro se*, the judge must conduct a colloquy with the defendant to determine whether he has "knowingly and intelligently elected to relinquish the benefits of appointed counsel."  *Bartlett*, 44 F.3d at 100.  "The entire procedure requires not only an intricate assessment of the

defendant's intent, knowledge, and capacity, but a strong measure of patience as well."
*Id.* (internal quotation marks and citations omitted).  Notably, the defendant need only
have the ability to competently waive the right, not the ability to competently represent
himself.  *Godinez*, 509 U.S. at 399.  A court may, but is not required to, deny the request
for self-representation where the defendant is competent to stand trial but lacks the
mental capacity to conduct his defense without the assistance of counsel.  *See Garrett*, 42
F.4th at 119-20.

   The state trial court's finding that Hisler's waiver was "knowing,
intelligent, [and] voluntary," *id* at 48, is supported by the record.  The trial court
repeatedly warned Hisler of the dangers of self-representation at three separate court
appearances and provided Hisler with adequate time to consider his options by
deferring a decision on the request to proceed *pro se* at the first two court appearances.
The court continued to advise Hisler at each appearance of the advantages of
representation by Grossman, especially in connection with the People's DNA evidence.
When Hisler continued to insist on representing himself, the court conducted a formal
inquiry into Hisler's education, legal knowledge, experience with the legal system, and
understanding of the risks.  During the colloquy, Hisler explained that he had reached
the tenth grade, had conducted legal research before, had been in and out of the
criminal justice system for 35 years, and understood the risk of proceeding *pro se*.  *See*
Dkt. 11-3 at 42-52.  While Hisler stated that his "psychiatric condition" made it difficult

to absorb legal material, there was no indication from this colloquy or from Hisler's earlier court appearances that Hisler was incompetent to stand trial or lacked the mental capacity to conduct his defense as to warrant further inquiry into his psychiatric condition. Accordingly, this aspect of Hisler's right to counsel claim fails as well.

### 3. *Claim of Duress and Psychological Pressure*

Relatedly, Hisler claims that the trial court used duress and undue psychological pressure to secure the conviction. *See* Dkt. 1 at 4 (Ground 6). Hisler raised this issue in his § 440.10 motion, Dkt. 11-1 at 14, rather than on direct appeal. The Queens County Supreme Court found that this claim was procedurally barred and meritless in any event. Dkt. 11-2 at 10. The merits ruling is entitled to deference as it is not an unreasonable application of law or an unreasonable determination of facts. The trial court gave Hisler the choice between proceeding *pro se* with Grossman's assistance or permitting Grossman to represent him. The Second Circuit has held that absent "good cause" for substituting a new attorney, such a choice was not "constitutionally offensive." *McKee*, 649 F.2d at 931. As stated, the trial court acted within its discretion in finding no basis to relieve Grossman and assign Hisler a fourth attorney. Accordingly, Hisler's related claim under Ground 6 of the Petition fails.

### C. *Sufficiency of Evidence for Second Degree Assault*

Hisler next asserts that the evidence was legally insufficient to prove the second-degree assault charge because Detective Bahrenburg did not suffer from a

28

sufficient physical injury.  Dkt. 1 at 2.  Hisler raised this claim on appeal to the

Appellate Division, Dkt. 11 at 220-228, but failed to raise this claim in his leave

application to the Court of Appeals.  *Id.* at 315; Dkt. 11-1 at 1-4.  Instead, the letter

accompanying the application designated Hisler's right to counsel claim as the only

"issue for review" and referred to the other two dismissed claims in passing, noting that

the "[t]he Appellate Division found the other two points unpreserved and meritless."

Dkt. 11-1 at 2.  Therefore, Hisler did not fairly apprise the insufficiency of the evidence

as an issue for review.  Hisler's claim therefore is "deemed exhausted" but "procedurally

barred" because "no relief is now available in the New York courts."  *Ramirez v. Att'y*

*Gen. of State of New York*, 280 F.3d 87, 93 (2d Cir. 2001); *see Grey v. Hoke*, 933 F.2d 117, 120

(2d Cir. 1991) (holding that two claims discussed in petitioner's Appellate Division brief

but not identified in his letter application to the Court of Appeals were procedurally

defaulted); *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) ("Arguing a single claim

at length and making only passing reference to possible other claims to be found in the

attached briefs does not fairly apprise the state court of those remaining claims.")

(internal citation omitted).  Hisler has failed to show that he is entitled to an exception

to the procedural default rule because he has not shown either (1) cause and prejudice

or (2) that a fundamental miscarriage of justice would occur if the merits of the federal

claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*,

501 U.S. at 750.

Even if Hisler exhausted his claim, Hisler's insufficiency of the evidence claim is without merit.  The Appellate Division adjudicated this claim on the merits in the alternative and found that the evidence "was legally sufficient to establish the defendant's guilt of assault in the second degree beyond a reasonable doubt" and "the verdict of guilt as to [assault in the second degree] was not against the weight of the evidence."  *Hisler I*, 68 N.Y.S. 3d at 904 (citations omitted).  This decision, which constitutes the "last reasoned decision" by the state court, is entitled to substantial deference as it was not based on an unreasonable application of federal law or an unreasonable determination of the facts.  *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[F]ederal court[s] should 'look through' . . . to the last related state-court decision that does provide a relevant rationale" and "defer . . . to those reasons if they are reasonable").

To prove second-degree assault, the People were required to present evidence that Hisler caused physical injury to Bahrenburg.  N.Y. Penal § 120.05(1) (McKinney 2024).  Penal Law 10.00(9) defines physical injury as "impairment of physical condition or substantial pain."  N.Y. Penal § 10.00(9) (McKinney 2024).

Bahrenburg testified that Hisler slammed a table into him, causing Bahrenburg's chair to fly backwards onto the ground.  As Hisler ran for the door, Bahrenburg grabbed him and threw him onto the table.  Bahrenburg and Hisler continued to wrestle around on the table and fall to the ground during the struggle.

30

Hisler was not subdued until three additional officers arrived and handcuffed him. *See* Dkt. 11-3 at 465-67; *see also id.* at 412. Bahrenburg testified that as a result of the assault, he sustained injuries to his back and shoulder. He experienced "severe pain" that travelled from his back down to his knee and could not move either his shoulder or back without experiencing pain. He received treatment at a hospital and ranked his pain level at a seven or eight out of ten. Bahrenburg was unable to continue normal work or leisure activities for three to four days. *See id.* at 469-70.

The evidence was legally sufficient to support the jury's finding that Hisler caused physical injury to Bahrenburg. *See People v. Lundquist*, 542 N.Y.S.2d 295 (2d Dep't 1989) (physical injury established where law enforcement officer suffered pain which caused him to be absent from work for two days); *People v. Williams*, 892 N.Y.S.2d 47 (2d Dep't 2010) (physical injury established where defendant elbowed victim in the eye, bit his arm and scratched his back; victim testified that he was given pain medication and ranked his pain level at a six or seven out of ten). Accordingly, habeas relief is not available on this ground.

D.    *The Confrontation Claim*

Hisler contends that the testimony of the OCME analyst, Beatrice Noel, and the DNA reports submitted into evidence deprived him of his confrontation right under the Sixth Amendment. Dkt. 1 at 4. Hisler, however, did not make this argument at trial. *See Hisler I*, 68 N.Y.S.3d at 905. This was acknowledged in his counseled brief to

31

the Appellate Division. Dkt. 11 at 236. The Appellate Division, citing the contemporaneous objection rule, held that Hisler's confrontation claim was "unpreserved for appellate review." *Hisler I*, 68 N.Y.S.3d at 905. The Appellate Division's ruling constitutes an adequate and independent state ground that bars this Court from reviewing the merits of the claim. *See Cone*, 556 U.S. at 465. That the Appellate Division also rejected the claim on the merits does not preclude this Court from applying the procedural default rule. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Hisler has not met either of the exceptions -- cause, prejudice, or a miscarriage of justice -- that would permit this Court's review of the merits of his procedurally defaulted claim.

Even if Hisler's claim was not procedurally defaulted, it fails on the merits. The Appellate Division's alternative finding that there was no Confrontation Clause violation was not an unreasonable application of clearly established federal law or an unreasonable determination of facts. In *Williams v. Illinois*, the Supreme Court held that an expert forensic analyst may testify about a DNA match based on a scientific report developed by non-testifying analysts without violating the Confrontation Clause. 567 U.S. 50, 71 (2012), *abrogated by Smith v. Arizona*, 602 U.S. 779 (2024). Relying on *Williams*, the Second Circuit in *Washington v. Griffin* held that an expert could testify about a match between the crime scene DNA and the defendant's where the expert had performed the final comparison but had not personally tested the defendant's buccal

swab herself.  876 F.3d 395, 407 (2d Cir. 2017) ("[T]he Supreme Court has never held that the Confrontation Clause requires an opportunity to cross-examine each lab analyst involved in the process of generating a DNA profile and comparing it with another.").

Although multiple analysts were involved in testing the DNA in this case, the record shows that Noel personally performed multiple stages of the analysis, including the final comparison between the crime scene DNA and Hisler's DNA.  For example, Noel testified that she conducted testing on the three swabs taken from the crime scene, developed a male DNA profile from the swabs, and prepared a statistical analysis of the swab to determine how rare the profile is.  Dkt. 11-3 at 504-06.  Then she personally compared the DNA profile developed from Hisler's buccal swab sample with the DNA recovered from the crime scene.  Dkt. 11-3 at 510-11.  The reports submitted into evidence corroborate this testimony.  Noel is identified as the "Analyst" and "Interpreting Analyst" on the report that generated the male DNA profile, entitled the "Forensic Biology DNA Profile Evaluation Form" and its associated "Laboratory Report."  Dkt. 11 at 63-65, 69; *Washington*, 876 F.3d at 401 (noting that "Interpreting Analyst" at OCME is responsible for "reviewing all the raw data associated with a given sample and making conclusions on the findings." (alterations adopted)).  Noel is also identified as the only "Analyst" on the "Laboratory Report," which confirmed Hisler's DNA matched the DNA from the crime scene, and as the final "reviewer" of the DNA

33

comparison.  *See* Dkt. 11 at 92, 135-36, 149.  Accordingly, Hisler has failed to show that the state court unreasonably rejected his Confrontation Claim.

As noted, a recent Supreme Court case, *Smith v. Arizona*, 602 U.S. 779 (2024), has abrogated *Williams*.  But "[n]ew procedural rules do not apply retroactively on federal collateral review."  *Edwards v. Vannoy*, 593 U.S. 255, 272 (2021).  Therefore, to the extent that *Smith* articulates a new rule of criminal procedure, it cannot be applied retroactively to Hisler on habeas review.

Moreover, Noel's testimony and the DNA reports are likely admissible even under *Smith*.  In *Smith*, the Supreme Court held that "[a] State may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her."  602 U.S. at 802-03.  The Confrontation Clause, however, is limited to "testimonial statements" that are offered for their truth.  *Id.* at 784.  Such statements include those made with "the primary purpose of" "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution" or "creating an out-of-court substitute for trial testimony."  *Davis v. Washington*, 547 U.S. 813, 822, 826 (2006); *Michigan v. Bryant*, 562 U.S. 344, 356, 358, 359 (2011).  It also includes "testimonial certificates of the results of forensic analysis [that] were created 'under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial.'"  *Smith*, 602 U.S. at 784-85 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009)).

34

As discussed, notations within the reports and forms indicate that several non-testifying analysts performed various aspects of the DNA testing. But Hisler does not identify -- nor does the record otherwise show -- any statements from these analysts that would arguably qualify as testimonial hearsay. Instead, the record shows that Noel was testifying about her own out-of-court assertions regarding the DNA match, *see, e.g.* Dkt. 11 at 63-65, 135-36 ("Laboratory Reports" by Noel asserting that the crime scene DNA matched Hisler's), and not those of an absent analyst. Finally, any potential error in this respect was harmless given Hisler's own concession that he was physically present at Yan's residence in both his opening and summation. *See* Dkt. 11-3 at 351, 539. Hisler is therefore not entitled to habeas relief on this ground.

### E.    *Ineffective Assistance of Trial Counsel*

Hisler next argues that he was deprived of his Sixth Amendment right to the effective assistance of counsel. Specifically, Hisler argues that Grossman was ineffective for failing to (1) submit Hisler for psychiatric evaluation to determine if he was competent to stand trial; (2) elicit certain evidence at the *Huntley* hearing; (3) file a speedy trial motion; and (4) discuss trial strategy and DNA evidence with Hisler. Hisler also argues that all his attorneys were ineffective for encouraging him to accept a guilty plea.

Respondent argues that Hisler's claim is procedurally barred because Hisler raised ineffective assistance of counsel as an issue in his CPL § 440.10 motion and

the Queens County Supreme Court rejected it under CPL § 440.10(2)(c), finding that it was based on matters on the record and that Hisler unjustifiably failed to raise it on direct appeal.  Dkt. 11-2 at 9-10.  It is true that Hisler raised an ineffective assistance counsel claim in his 440.10 motion.  The court, however, apparently considered Hisler's ineffective assistance claim as part of Hisler's contention that he was unfit to assist in his own defense, and not as an independent ground for relief.  *See id.* ("Defendant now moves to vacate the judgment claiming that he could not assist in his own defense because he had a mental disability which resulted in ineffective assistance of counsel.").  I therefore do not find that the state court "clearly and expressly state[d] that its judgment rests on a state procedural bar."  *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) ("Habeas review is not prohibited . . . unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." (internal quotation marks and citation omitted)).

Nonetheless, Hisler's challenges are without merit.  To prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness" and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 669, 688, 694 (1984).

Grossman's decision not to submit Hisler to a psychiatric examination was not objectively unreasonable. "[W]e must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (internal quotation marks and citation omitted). Hisler's first attorney had a psychological assessment of Hisler completed as part of the pre-pleading memorandum. The assessment identified several mental health concerns but did not suggest that Hisler was incompetent. *See Nichols*, 56 F.3d at 412 ("[S]ome degree of mental illness cannot be equated with incompetence to stand trial."). Further, as discussed above, there were also no facts indicating that Grossman was aware of any incompetence.

Grossman's performance at the *Huntley* hearing was not constitutionally deficient either. As the court explained, Grossman may have avoided the issue of the *Miranda* form because it would have required Hisler to testify, and Hisler would have been cross-examined on this testimony at trial. Dkt. 11-3 at 13-14. Even if this choice was unreasonable, Hisler cannot show that he suffered prejudice. Donleavy's trial testimony established that Hisler's failure to initial the final question was an inadvertent oversight and did not alter the fact that the statements were made voluntarily.

Voluntariness is assessed in light of "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation,

37

and the conduct of law enforcement officials" to determine whether "the defendant's will was overborne by the [police officers'] conduct." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). Written confirmation of a verbal waiver is not necessary. *See Carolina v. Butler,* 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel . . . is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived his [*Miranda*] rights.").

Donleavy testified that he advised Hisler of his *Miranda* rights by reading them from the form and asked Hisler if he understood after reading each right. Hisler verbally responded "yes" to each question listed on the form. Donleavy memorialized these answers by writing "yes" to each question listed. Donleavy asked Hisler to write his initials next to each question and to sign his name at the bottom of the form. Hisler signed the form and initialed every question except the last one. Donleavy testified that he did not notice that the last question had not been initialed, maintained that Hisler verbally responded yes this question, and had no reason to believe that Hisler was reluctant to speak with him. *See* Dkt. 11-3 at 405-408.

Hisler's remaining contentions fail. Hisler cannot show that Grossman was ineffective for failing to file a speedy trial motion under CPL § 30.30. Indeed, the court denied Hisler's *pro se* § 30.30 motion, concluding that only 58 days was chargeable to the People. *Id.* at 603. "[T]he underlying motion must be shown to be meritorious,

and there must be a reasonable probability that the verdict would have been different if the [motion had been granted]." *United States* v. *Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (internal citation omitted).

Second, counsel did not falsely represent to the court that he had discussed DNA evidence with Hisler. Rather, counsel acknowledged that he had only discussed the DNA expert's preliminary review with Hisler but had not yet consulted with Hisler on the expert's final conclusions. Dkt. 11-3 at 51. Hisler also cannot claim that counsel was ineffective for failing to discuss trial strategy. Hisler elected to represent himself and was therefore responsible for his own defense. Although Grossman was appointed as a "legal advisor," the Supreme Court has explained that the role of advisors "to aid the accused *if and when* the accused requests help." *Faretta*, 422 U.S. at 834 n. 46. Hisler does not claim that he requested and was denied Grossman's help at any point during the trial.

Finally, Hisler's argument that all three of his attorneys were ineffective for encouraging him to accept a plea deal has no merit. "The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case. This decision must ultimately be left to the client's wishes . . . but counsel may and *must* give the client *the benefit of counsel's professional advice on this crucial decision*." *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996), *decision clarified on reh'g*, 90 F.3d 36 (2d Cir. 1996) (emphasis in original) (internal quotation marks and

citation omitted).  Hisler's attorneys all performed their duties in this regard.  Moreover, in light of the strength of the evidence -- his DNA was found at the scene -- the attorneys' recommendation that he consider pleading guilty was evidently reasonable. Accordingly, habeas relief is not available on these grounds.

### F.  *Speedy Trial*

Hisler contends that he was deprived of his right to a speedy trial, which denied him due process.  Dkt. 1 at 5 (Ground 7).  Hisler raised an identical claim in his **§ 440.10** motion.  Dkt. 11-1 at 14.  The court construed Hisler's claim as one based on New York's speedy trial statute, CPL § 30.30, and deemed it procedurally barred as it involved matters on the record and should have been raised on direct appeal.  Dkt. 11-2 at 11.  The substance of Hisler's argument in both his § 440.10 motion and in the Petition are that the trial court erred in denying his § 30.30 motion because it miscalculated the number of days charged to the People.  *See* Dkt. 11-1 at 47-51 (440.10 motion); Dkt. 14 at 43 (Hisler's reply brief).  Accordingly, Hisler's claim is one under state law and is not cognizable under federal habeas review.  *See Richardson v. Miller*, No. 22CV6606LTSJLC, 2024 WL 763395, at *12 (S.D.N.Y. Feb. 23, 2024) (collecting cases).  Although Hisler makes passing reference to the Due Process Clause in the heading of the claim in the Petition, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).

Even if the Court assumes that the Petition presents a cognizable

constitutional speedy trial claim, Hisler never raised a Sixth Amendment speedy trial claim in the state courts, either on direct appeal or on collateral attack.  *See Yampierre v. Phillips*, No. 05-cv-2249, 2010 WL 744526, at *10 (E.D.N.Y. Mar.1, 2010) ("It is well-established . . . that solely raising a § 30.30 claim does not 'fairly present' a Sixth Amendment speedy trial claim.") (internal citations omitted).  Hisler's claim is therefore deemed exhausted but procedurally barred unless he establishes "cause for the default and prejudice," or "that failure to consider the claim will result in a miscarriage of justice."  *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  Hisler has not met either exception to procedural default.

The constitutional speedy trial claim is meritless, in any event.[2]  The Sixth Amendment "guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).  The four factors used to determine whether this right has been violated include: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514 (1972)).  None of these factors are necessary or sufficient alone to find deprivation of the right, "rather, they are related factors which must be considered together with such other circumstances as are

---

[2]      While Hisler frames his constitutional claim in terms of his right to "due process," I construe the Petition as asserting claims under the Speedy Trial Clause of the Sixth Amendment.  "[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v. Medunjanin*, 752 F.3d 576, 591 (2d Cir. 2014) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

relevant." *United States v. Williams*, 372 F.3d 96, 113 (2d Cir. 2004).

The first factor, the length of the delay, is a triggering mechanism. *United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013). Here, there was a 14-month delay between the indictment and trial, which is presumptively prejudicial. *See, e.g.*, *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting "general consensus" that delay of more than eight months is "presumptively prejudicial"). The remaining factors, however, decisively weigh against Hisler. Hisler has not shown any deliberate attempt by the prosecution to delay the case. Indeed, much of the delay was due to his repeated requests to change counsel. In fact, the trial court found that only 58 days of the delay was chargeable to the People and caused by factors such as trial preparation and motion practice. Dkt. 11-3 at 603-06. Further, while Hisler asserted his statutory speedy trial right, he does not identify any prejudice to him caused by the delay. *See Williams*, 372 F.3d at 113 (affirming denial of speedy trial claim where defendant "failed to articulate prejudice from the delay with any specificity"). Accordingly, habeas relief must be denied on this ground.

## G. *Ineffective Assistance of Appellate Counsel*

Hisler contends that his appellate counsel was constitutionally ineffective. Dkt. 1 at 5 (Ground 8). Federal courts apply *Strickland v. Washington*, 466 U.S. 668 (1984) to ineffective assistance of appellate counsel claims. Thus, to show that appellate counsel representation was ineffective, a defendant "must establish that (1) the

attorney's representation fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defense." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citing *Strickland*, 466 U.S. at 687). "[W]hen a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." *Clark v. Stinson*, 214 F.3d 315, 328 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). "A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (citation omitted).

In his *coram nobis* motion, Hisler claimed that appellate counsel was ineffective because counsel (1) raised two issues that were unpreserved; (2) failed to include certain facts regarding Hisler's mental illness as further support for the claim that the court should not have permitted him to proceed *pro se*; and (3) failed to argue that Hisler's third attorney, Grossman, was ineffective based on his failure to provide additional evidence of Hisler's mental health history. *See* Dkt. 11-2 at 111-112. The Appellate Division denied Hisler's claim on the merits. *Id.* at 158. This decision is entitled to substantial deference, as it was not an unreasonable application of *Strickland*.

43

Hisler was not harmed by the decision to raise unpreserved issues. Counsel persuasively argued that the court should reach the unpreserved claims in the interests of justice because Hisler had represented himself at trial. Indeed, Hisler himself raises these same two unpreserved issues in Grounds 1, 2, and 6 of his Petition. *See generally* Dkt. 1. Second, Hisler's counsel was permitted to use her judgment in deciding how to present the facts in the most persuasive manner, and the briefs did in fact include many of the facts that Hisler sought to be included. Dkt. 11 at 218-19 (citing Hisler's outburst and "zoning out" during trial as additional evidence of his incapacity). Finally, counsel made a strategic choice not to raise a claim for ineffective assistance on appeal. In her response to the *coram nobis* motion, counsel explained that "would have involved substantial material outside of the record and thus direct appeal was not the proper vehicle for this claim." Dkt. 11-2 at 112. Counsel's strategic choices are "virtually unchallengeable" before this Court. *Strickland*, 466 U.S. at 690. As I have already found that Hisler's ineffective assistance of trial counsel claim is meritless, there is also no argument that this omitted claim was "clearly stronger than the other [three] claims that were presented." *Mayo*, 13 F.3d at 533. Hisler is not entitled to relief.

## *CONCLUSION*

I conclude that Hisler has failed to show any basis for relief under 28 U.S.C. § 2254.  Accordingly, the Petition is denied.  I decline to issue a certificate of appealability because Hisler has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.  The Clerk shall also mail copies of this memorandum decision and the judgment to Hisler at his last known address.

SO ORDERED.

Dated:      New York, New York
            March 25, 2025

s/ Denny Chin

DENNY CHIN
United States Circuit Judge
Sitting by Designation

45